The **PEOPLES NATIONAL BANK,**
**Kingfisher, Oklahoma, Appellant,**

v.

**L.E. UHLENHAKE, et al., Appellees.**

**No. 63865.**

Court of Appeals of Oklahoma,
Division No. 2.

Dec. 3, 1985.

Paul I. Schulte, Baker, Logsdon & Schulte, Kingfisher, for appellant.

F. Anthony Musgrave, Sturgill, Musgrave, Hensley & Mitchell, Oklahoma City, for appellees.

MEANS, Judge.

Bank appeals from the trial court's judgment finding that its security interest was inferior to that of defendant creditor Boecking Machinery, Inc. Having reviewed the record and applicable law, we affirm.

This action was brought by Bank against Kurb Services, Inc., and its creditors, including Boecking Machinery, Inc. Bank sued on several notes which were in default and sought a judgment for the amount in default as well as foreclosure on certain security agreements under those notes. This appeal involves only that part of the court's judgment which determined that Boecking had first priority in a security interest in a Caterpillar tractor and a Caterpillar scraper.

On March 14, 1983, defendant L.E. Uhlenhake, d/b/a Bud's Construction Company, purchased the tractor and scraper from Boecking. On that date Uhlenhake and Boecking entered an installment sales security agreement in which Uhlenhake promised to pay Boecking $71,779.05 for the equipment and Boecking was granted a security interest in the equipment.

On March 15, 1983, Boecking filed a financing statement in Oklahoma County to perfect its interest in the equipment. The financing statement lists the debtor as: "Buds Construction Co., Route 1, Kingfisher, Ok 73750."

On August 1, 1983, defendant Kurb Services, Inc., executed a promissory note to Bank for $350,000. The note was signed by L.E. Uhlenhake as Chairman of the Board of Kurb Services. As part of the security for the note, Kurb Services granted Bank a security interest in several pieces of equipment. Included in the list of collateral were the tractor and scraper which were already listed as security for the installment sales agreement with Boecking. Bank subsequently filed its financing statement to perfect its interest in the equipment and other collateral.

As stipulated at trial, defendant L.E. Uhlenhake, d/b/a Bud's Construction Compa-

ny, defaulted in payments to Boecking and owed $58,242.89 for the equipment. Defendant Kurb Services defaulted in its payments to Bank, owing $322,281.13.

At trial, the court found that Bank's security interest in the tractor and scraper did not attach because the debtor, Kurb Services, had no ownership interest in the collateral. The court also found that Bank had actual knowledge that Uhlenhake was doing business as Bud's Construction Company.

Although Bank asserts that the court erred in finding that its security interest did not attach to the equipment, we address only the dispositive issue, that of priority. Because we find that Boecking's interest was perfected prior to that of Bank's, it is not necessary to reach the question of whether Bank's interest attached.

As part of its argument, Bank contends that Boecking improperly perfected its security interest by naming "Buds Construction Co." as the debtor. Boecking concedes that there is no entity known as "Buds Construction Co." It is neither a partnership, nor a corporation, but rather "L.E. Uhlenhake, d/b/a Bud's Construction Company." As to any other party, Boecking's security interest might not be perfected. As to Bank, however, equity demands a different result.

Bank's employees testified that they knew Uhlenhake was doing business as Bud's Construction Company prior to the loan which was executed by Uhlenhake for Kurb Services. In fact, Bank filed lien entry forms listing its debtor as "Bud's Construction Company." Bank's documents show that it knew Uhlenhake operated under the names of "Kurb Services, Inc." and "Bud's Construction Company." There is no question that Bank had actual knowledge that Uhlenhake used the name "Bud's Construction Company."

When Bank took its security interest in the collateral from Kurb Services, Inc., it did so on the belief that Uhlenhake was donating certain equipment to Kurb Services. Bank admitted that it searched the records for liens against L.E. Uhlenhake, but stated that it did not search for liens filed against Bud's Construction Company, in spite of the fact that Bank knew Uhlenhake was doing business as Bud's Construction Company. Bank further admitted that its search of the records revealed liens filed against "L.E. Uhlenhake d/b/a Bud's Construction Company." Thus, even absent Bank's actual knowledge of Uhlenhake's doing business as Bud's Construction Company, its search of the records would put it on constructive notice that it should search for liens filed against Bud's Construction Company.

Title 12A O.S.1981 § 1–103, provides:

Unless displaced by the particular provisions of this act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

The doctrine of estoppel supplements the Uniform Commercial Code in order to promote fairness and justice. *See, e.g., Central National Bank & Trust Co. v. Community Bank & Trust Co.*, 528 P.2d 710, 713 (Okla.1974). As stated in 12A O.S.1981 § 1–102, the Code is to be applied to promote its underlying purposes and policies.

To perfect a security interest in collateral, a creditor such as Boecking must file a financing statement which complies with the requirements of 12A O.S.1981 § 9–402. The purpose of the filing system is "to give notice to creditors and other interested parties that a security interest exists in property of the debtor." *In re Glasco, Inc.*, 642 F.2d 793, 795 (5th Cir. 1981). Perfect accuracy, however, is not required as long as the financing statement contains sufficient information "necessary to put any searcher on inquiry." *In re Excel Stores, Inc.*, 341 F.2d 961, 963 (2d Cir.1965). *See also In re Fowler*, 407 F.Supp. 799, 802 (W.D.Okla.1975). The emphasis of the Uniform Commercial Code is

thus "directed toward commercial realities not corporate technicalities." *Siljeg v. National Bank of Commerce,* 509 F.2d 1009, 1012 (9th Cir.1975).

Section 9–402(8), reflects this emphasis by providing: "A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading." 12A O.S.1981 § 9–402. The effect of errors in the listing of the debtor's name has been the subject of extensive litigation. *See generally* Annot., 99 A.L.R.3d 478 (1980). The decisions generally turn on the particular factual circumstances involved. Therefore, the critical inquiry in assessing whether Boecking's security interest is perfected is whether a "reasonably prudent subsequent creditor would have discovered the prior security interest." *In re McBee,* 714 F.2d 1316, 1321 (5th Cir.1983).

In the instant case, Bank had constructive notice and actual notice that Uh-lenhake was doing business as Bud's Construction Company. As to Bank, the financing statement filed under "Buds Construction Co." could not be considered misleading. Bank's failure to search the records under the name "Buds Construction Co." was not the action of a reasonably prudent subsequent creditor.

The trial court's order finding that Boecking's security interest in the equipment had priority over Bank's is supported by the law and the evidence. Accordingly, the judgment is affirmed.

REIF, P.J., concurs.

BACON, J., concurs in result.