**In re Terrance Joseph KINDERKNECHT, Debtor.**

**Carl R. Clark, Trustee, Plaintiff,**

**v.**

**Deere and Company and Deere Credit Services, Inc., Defendants.**

**Bankruptcy No. 02–20733–7–JTF. Adversary No. 02–6049.**

United States Bankruptcy Court, D. Kansas.

Oct. 14, 2003.

Don C. Staab, Hays, KS, for Debtor.

Carl R. Clark, Lentz & Clark, P.A., Overland Park, KS, for Trustee.

**48**

*MEMORANDUM OPINION*[1]

JOHN T. FLANNAGAN, Bankruptcy Judge.

A bankruptcy trustee can use § 544(a)(1) of the Bankruptcy Code to avoid a security interest in personal property that is unperfected on the date of the bankruptcy petition.[2] Under Revised Article 9 of the Kansas Uniform Commercial Code, a filed financing statement will perfect a security interest unless the financing statement is *seriously misleading*.[3] The question here is whether financing statements filed in the debtor's commonly used nickname are *seriously misleading* when a search of the U.C.C. filing system under the debtor's legal name using the filing office's standard search logic fails to produce those financing statements, but a similar search using the debtor's nickname does produce those financing statements.

Revised Article 9 of the Kansas Uniform Commercial Code became effective July 1, 2001. In August and September of 2001, Terry J. Kinderknecht granted defendants security interests in two farm implements. Deere[4] promptly filed financing statements on the collateral in the name "Terry J. Kinderknecht." On March 11, 2002, Mr. Kinderknecht filed a petition for Chapter 7 bankruptcy relief in his legal name, "Terrance J. Kinderknecht." Although Mr. Kinderknecht captioned his bankruptcy petition in his legal name, he signed the petition "Terry Kinderknecht." His bankruptcy schedules list John Deere as a secured creditor.

The court holds that Revised Article 9 does not prohibit the use of a nickname in financing statements. When a search using a debtor's nickname and the filing office's standard search logic will produce the financing statements, they are not *seriously misleading*. Since the financing statements in the name of "Terry J. Kinderknecht" are not seriously misleading, Deere's security interests are perfected. Consequently, the trustee cannot avoid the security interests with his § 544 strong arm power.[5]

## I. U.C.C. RULES

### The Name of the Debtor

The Uniform Commercial Code, which appears in Chapter 84 of the Kansas Statutes Annotated, consists of nine Articles. The Ninth Article, Secured Transactions, is divided into eight parts. Part 5 of Revised Article 9 is composed of 26 sections governing financing statements, i.e., U.C.C. §§ 9–501 through 9–526.

These sections set out information that must be included in a financing statement to make it sufficient. For example, under U.C.C. § 9–501(a), a financing statement must include the name of the debtor, the name of the secured party (or a representative), and an indication of the collateral

---

1. The trustee, Carl R. Clark, appears on his own behalf. Deere and Company and Deere Credit Services, Inc., appear by their attorneys, Bruce J. Clark and Anne L. Baker of Wright, Henson, Somers, Sebelius, Clark & Baker, L.L.P., of Topeka, Kansas. There are no other appearances.

2. *See* 11 U.S.C. § 544(a)(1); K.S.A.2002 Supp. 84–9–317, 84–9–203(b)(2), and 84–9–102(52).

3. K.S.A.2002 Supp. 84–9–506(a).

4. This opinion will refer to Deere & Company and Deere Credit Services, Inc. as "Deere," collectively.

5. The court finds that this adversary proceeding is core under 28 U.S.C. § 157 and that the court has jurisdiction under 28 U.S.C. § 1334 and the general reference order of the District Court effective July 10, 1984 (D. Kan. Rule 83.8.5).

covered by the statement.[6] Although a financing statement must include the name of the debtor, Part 5 offers no guidance on what constitutes "the name of an individual debtor," i.e., whether the name of the debtor may be a nickname as opposed to a legal name. Nor do the sections indicate when the name of the debtor may be deemed sufficient.

However, U.C.C. § 9–506(b) does set forth the consequences of a financing statement that does not sufficiently provide the name of the debtor, whether the debtor is an organization or an individual. That section states that a financing statement is seriously misleading if it fails sufficiently to provide the name of the debtor in accordance with U.C.C. § 9–503(a):

> **84–9–506. (b) Financing statement seriously misleading.** Except as otherwise provided in subsection (c), a financing statement that fails sufficiently to provide the name of the debtor in accordance with K.S.A.2002 Supp. 84–9–503(a) and amendments thereto, is seriously misleading.

This section's reference to U.C.C. § 9–503(a) is not helpful, however. Uniform Commercial Code § 9–503(a)(5)(A) concerns names of individuals and self-reflexively says that a financing statement is sufficient if it provides the individual's name:

> **84–9–503. Name of debtor and secured party. (a) Sufficiency of debtor's name.**
>
> A financing statement sufficiently provides the name of the debtor:
>
> (1) If a debtor is a registered organization....
>
> ....
>
> (5) in other cases:

(A) If the debtor has a name, only *if it provides the individual or organization name of the debtor;* and

(B) If the debtor does not have a name, only if it provides the name of the partners, members, associates, or other persons comprising the debtor.[7]

These two sections [§ 9–506(b) and § 9–503(a)(5)(A)] give no guidance on what constitutes a sufficient name of the debtor for purposes of a U.C.C. financing statement. Under § 9–506(b), to avoid being labeled seriously misleading, a financing statement must sufficiently provide the name of the debtor in accordance with U.C.C. § 9–503(a). Uniform Commercial Code § 9–503(a) states that a financing statement sufficiently provides the name of an individual debtor "if it provides the individual ... name of the debtor." Neither section explains whether the name of the debtor means legal name or may also mean a commonly used nickname or whether one is more or less "sufficient" than the other.

### The Trustee's Argument

The trustee claims, however, that the *name of the debtor* means the debtor's legal name: the name on the debtor's birth certificate, driver's license, and Social Security card and in the caption of his bankruptcy petition, i.e., "Terrance J. Kinderknecht."

To support his argument, the trustee cites U.C.C. § 9–506(c), a section expressing an exception to U.C.C. § 9–506(b). The text of this statute is confusing with its reference to K.S.A.2002 Supp. 84–9–508(a), an apparent typographical error. The correct reference should have been to K.S.A.2002 Supp. 84–9–503(a). The 2000 Session Laws of Kansas show K.S.A. 84–9–508(a) as Section 77 of the enacting bill and it refers back to Section 74 of that bill,

---

6. K.S.A.2002 Supp. 84–9–502(a)(1), (2) and (3).

7. Emphasis added.

which corresponds to K.S.A. 84–9–503. Also, the ALI Model Code confirms that the proper reference should have been to U.C.C. § 9–503(a).

Section 9–506(c) provides that if a search of the filing office records using the *debtor's correct name* and the filing office's standard search logic would disclose a financing statement that fails sufficiently to provide the name of the debtor as required by U.C.C. § 9–503(a), the financing statement is not seriously misleading:

> (c) **Financing statement not seriously misleading.** If a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose a financing statement that fails sufficiently to provide the name of the debtor in accordance with K.S.A.2002 Supp. 84–9–508(a) [sic] and amendments thereto, the name provided does not make the financing statement seriously misleading.[8]

As noted above, U.C.C. § 9–503(a) merely states a financing statement sufficiently provides the name of the debtor who is an individual when it provides the individual name of the debtor. And under U.C.C. § 506(b), a financing statement is seriously misleading if it fails sufficiently to include the name of the debtor. All this circuity is confusing, but the bottom line seems to be that the drafters intended to save a financing statement from being seriously misleading if it could be found in a search using the filing office's standard search logic.

### Individual Debtor's Correct Name

█ The trustee focuses on the phrase "the debtor's correct name" in § 9–506(c), however, and equates it with the debtor's legal name. Since a search of the U.C.C. records in the debtor's legal name using the filing office's standard search logic fails to produce Deere's financing statements in the nickname of "Terry," the trustee reasons by negative inference from the language of this section that the financing statements are seriously misleading. As we have seen, however, nothing in the other financing statement sections suggests that the "debtor's correct name" necessarily means his legal name as opposed to a nickname. If a similar search, made with the debtor's nickname, "Terry Kinderknecht," will produce the relevant financing statements, this section can as easily be read to pronounce them not seriously misleading. The court adopts this reading and considers "Terry Kinderknecht" a correct name in these circumstances, not the legal name "Terrance Kinderknecht."

The trustee has attached to his motion for summary judgment a commentary entitled "Search Logic from MARS," authored by the Hon. John K. Pearson, a retired bankruptcy judge from the District of Kansas.[9] The commentary suggests that the phrase "debtor's correct name" in § 9–506(c) necessarily means an individual debtor's legal name. The court respectfully disagrees with Judge Pearson. The only authority the article cites for its conclusion is U.C.C. § 9–521 of Revised Article 9. This section incorporates an official financing statement form that calls for the debtor's legal name. The Official Comment to U.C.C. § 9–521 states, however, that searchers are not bound to use the official form for financing statements:

> [A]lthough filers are not required to use the forms, they are encouraged and can be expected to do so, inasmuch as the forms are well designed and avoid the

---

8. K.S.A.2002 Supp. 84–9–503(c).

9. Hon. John K. Pearson, *Search Logic from MARS*, 21–MAY Am. Bankr.Inst. J. 24 (2002).

risk of rejection on the base of form or format.... Filing offices may and should encourage the use of these forms by declaring them to be the "standard" (but not exclusive) forms for each jurisdiction.[10]

If filers are not bound to use the form, they are not bound to use an individual debtor's legal name in a financing statement. If the drafters of the Model Code and the Kansas Legislature intended to require that financing statements include debtors' legal names, they should have said so clearly in the text of Article 9.

To summarize, although it is clear that a financing statement must include the name of an individual debtor in order to be sufficient, nothing in Revised Article 9 clarifies what is considered an individual's name or what a "debtor's correct name" means. Nothing in Revised Article 9 mandates a debtor's legal name is necessarily the debtor's correct name. Nothing in Revised Article 9 requires that a legal name must be used in a financing statement. Therefore, a commonly used nickname may be a debtor's correct name and under § 9–506(c), if a search using a nickname and the filing office's standard search logic produces a financing statement, it is not misleading. This is the case here.

## II. TWO SEARCH METHODS

While some parts of this section are subject to the criticism that they are unnecessary to the opinion, i.e., the court's observations about the structure of the current Kansas U.C.C. filing system, the court has nevertheless included them in the hope they may help inform users of the system of its structure under Revised Article 9. In all likelihood, there will be a

continuing debate concerning how this system should be structured.

### Access Kansas

In Kansas, two U.C.C. search methods are available. The first search method, known as Access Kansas, is an unofficial on-line search authorized by Kansas Administrative Regulation 7–17–24 and promulgated by the Kansas Secretary of State. The regulation creates an unofficial public access database available for searches over a five-year period. It can be accessed via the Internet through the Secretary of State's website. Access Kansas does not use the filing office's standard search logic and is not an official search by the Secretary of State. This database permits searches that provide results broader than those produced by the official search method:

> During the transition period of July 1, 2001 through June 30, 2006, public access to *a database* that produces search results beyond exact name matches may be provided by the secretary of state. The supplemental database shall not be considered part of the standard search logic and shall not constitute an official search by the secretary of state.[11]

### Official Searches

The second search method is an official search conducted by the Secretary of State's U.C.C. filing office. This method uses the filing office's standard search logic referred to in U.C.C. § 9–506(c) and the regulations emphasizing exact name matches. This kind of search request can be made on-line or in writing. The filing office responds to a search request with a certified report of the results.

---

**10.** Official UCC Comment to K.S.A.2002 Supp. 84–9–521.

**11.** K.A.R.2002 Supp. 7–17–24 (emphasis added).

*Standard Search Logic*

The filing office's standard search logic referred to in U.C.C. § 9–506(c) is explained in Kansas Administrative Regulations 2002 Supp. 7–17–22(a). Subpart (a) of the regulation is quoted here (with paragraph numbers removed and emphasis added):

> Search results shall be produced by applying only standardized search logic to *each name* presented to the filing officer. Human judgment shall not play a role in determining the results of the search, except with respect to supplemental responses regarding individual debtor names that are not automated. The standardized search logic used shall meet the following criteria: There is no limit to the number of matches that may be returned in response to the search criteria. The characters searched are letters "a" through "z" and numbers 0 through 9. No distinction is made between uppercase and lowercase letters, and all letters are converted to uppercase in *the filing office database.* Punctuation marks, accents, and suffixes are disregarded. Words and abbreviations at the end of a name that indicate the existence or nature of an organization are disregarded. These words and abbreviations include the following: Association; bank; church college … etc. The words "a" and "the" at the beginning of the search criteria are disregarded. All spaces are disregarded. For middle names of individuals, initials are equated with all names that begin with these initials, and the absence of a middle name or initial is equated with all middle names and initials. The word "and" and the symbol "&" are equated with each other.

Subpart (b) of the rule addresses exact name matches:

> After using the criteria in subsection (a) to modify the name of the debtor requested to be searched, the search shall reveal only names of debtors that are contained in unlapsed financing statements and *exactly match the name requested,* as modified.[12]

*Databases*

Kansas Administrative Regulation 7–17–24, which authorizes Access Kansas, and the filing office's standard search logic raise a question. They lead to the conclusion that two separate databases are maintained, each with its own search logic programs. One might expect, however, that efficiency would constrain the Secretary of State to use only one database and two search logic programs, one for an Access Kansas search and one for an official filing office search. Exactly what the case is in practice remains unclear from the record.

### III. ANNE BAKER'S SEARCH AFFIDAVIT

This adversary proceeding is before the court on cross-motions for summary judgment.[13] Deere's counsel, Anne Baker, appended her affidavit to Deere's memorandum in support of its motion for summary judgment.[14] The trustee, Carl R. Clark, has conceded the veracity of Anne Baker's

---

**12.** K.A.R.2002 Supp. 7–17–22 (emphasis added).

**13.** Trustee's Motion for Summary Judgment filed March 14, 2003 (Doc. # 15), and Motion of Defendants Deere and Company and Deere Credit Services, Inc. For Summary Judgment filed March 17, 2003 (Doc. # 18).

**14.** Memorandum Brief in Support of the Motion of Defendants Deere and Company and Deere Credit Services, Inc. for Summary Judgment filed March 17, 2003 (Doc. # 19).

affidavit and the documents attached to it. Anne Baker's affidavit sets forth the results of both U.C.C. search methods, each of which finds the John Deere financing statements using "Terry" as a first name.

## AFFIDAVIT OF ANNE L. BAKER

COMES NOW the undersigned, being of sound mind and lawful age, and states under oath as follows:

1. I am one of the counsel representing Deere and Company and Deere Credit Services in the above captioned matter.

2. In conjunction with such representation, I conducted a UCC search utilizing Access Kansas on February 28, 2003. The search results were as follows:

    No results for "Kinderknecht, Terrance";

    13 results for "Kinderknecht, Terry";

    24 results for "Kinderknecht, T.";  and

    119 results for "Kinderknecht."

    Copies of the search results are attached hereto.

3. I also on February 28, 2003 requested the office of the Secretary of State to conduct a UCC search. Those results were as follows:

    No results for "Kinderknecht, Terrance";

    13 results for "Kinderknecht, Terry"; and

    No results for "Kinderknecht."

    A copy of the report submitted to me by the filing officer is attached hereto.

FURTHER AFFIANT SAITH NOT.

Anne Baker attached documents to her affidavit showing the search results relating to Deere's financing statements involving the debtor. The following is a description of those documents:

### Access Kansas Search Attachments

This type of search produces results retrieved on-line via the Internet in the form of computer screen printouts.

#### Terrance Kinderknecht

Paragraph 2 of the affidavit lists the number of results produced by a U.C.C. search Anne Baker conducted on February 28, 2003, using Access Kansas.

Attached to the affidavit is a copy of the Access Kansas on-line search results which states:

No results Found for KINDERKNECHTTERRANCE.

#### Terry Kinderknecht

Another attachment to the affidavit is a copy of an on-line search result in the form of a computer screen printout stating:

Search Results for "KINDERKNECHTTERRY"

Select the documents you wish and press the SUBMIT button.

Following this statement is a list of the names and addresses of 13 individuals with the first name "TERRY" and the last name "KINDERKNECHT." No financing statement file numbers are displayed. *Three of the responses relate to Deere's financing statements referencing "KINDERKNECHT, TERRY J."* The remaining results refer to financing statements in the name "KINDERKNECHT, TERRY L" or just "KINDERKNECHT, TERRY" at addresses different from that of the debtor.

#### T Kinderknecht

Another attachment to the affidavit is a copy of an on-line search result in the form of a computer screen printout stating:

Search Results for "KINDERK-NECHTT"

Select the documents you wish to view and press the SUBMIT button.

Following this statement is a list of names and addresses of 24 persons with a first name beginning with the letter "T" and a last name of "KINDERKNECHT," *three of which relate to Deere financing statements in the name "KINDERKNECHT, TERRY J."* The remaining results refer to financing statements in names beginning with the letter "T" and the last name "KINDERKNECHT" at addresses different from that of the debtor.

### Kinderknecht

A final attachment to the affidavit is a copy of an on-line search result in the form of a computer screen printout stating:

Search Results for "KINDERK-NECHT"

Select the documents you wish to view and press the SUBMIT button.

Following this statement is a list of 120 names and addresses with the last name "KINDERKNECHT," *three of which relate to "KINDERKNECHT TERRY J."* The remaining results involve various persons with the last name "KINDERK-NECHT" at addresses different from that of the debtor.

No copies of computer screen printouts of the actual financing statements are attached to the affidavit.

### Official Filing Office Search Attachments

This type of search produces a certified report of the Secretary of State's filings.

Paragraph 3 of the affidavit lists the number of U.C.C. search results produced by a Secretary of State search conducted on February 28, 2003, at the request of Anne Baker:

### Terrance Kinderknecht

Attached to the affidavit is a copy of a certified report from the Secretary of State signed by Robin Burch, Filing Officer, dated 02/27/03, which states:

This listing reflects filings for the following Debtor:

**KINDERKNECHTTERRANCE**

Please verify the above name is printed exactly as requested. If the name searched is an individual, it is listed with the last name first.

*A search for the debtor listed above did not reveal any financing statements that match the criteria listed above.* 02/27/03 Robin Burch, Filing Officer. (Emphasis added.)

### Terry Kinderknecht

Another attached certified report states:

This listing reflects filings for the following Debtor:

**KINDERKNECHT TERRY**

Please verify the above name is printed exactly as requested. If the name searched is an individual, it is listed with the last name first.

Following this statement is a list of 13 UCC-1 financing statements with the name of a debtor, the file number of the statement, the date and time it was filed, the number of pages in the financing statement, and the name and address of the secured party. *Three of the listed financing statements relate to the debtor in this case.* None of the actual financing statements were attached to the affidavit. The certificate is dated 02/27/03 and signed by Robin Burch, Filing Officer.

### Kinderknecht

A final attached certified report signed by Robin Burch, Filing Officer, and dated 02/27/03 states:

This listing reflects filings for the following Debtor:

**KINDERKNECHT**

Please verify the above name is printed exactly as requested. If the name searched is an individual, it is listed with the last name first.

*A search for the debtor listed above did not reveal any financing statements that match the criteria listed above.* 02/27/03 Robin Burch, Filing Officer. (Emphasis added.)

### Summary of Search Results

Anne Baker's affidavit summary shows that both search methods using "Terry Kinderknecht" as a search criterion found the Deere financing statements because the search criterion name is an exact match with the name on the financing statement in the database. This fact controls the decision in this matter.

Neither search method produces financing statements using "Terrance Kinderknecht" as a search criterion. But nothing in the U.C.C. financing statement requirements commands that a legal name be used in a financing statement or as a search criterion.

The differences in the results of the two searches are apparent. An Access Kansas search is broader than an official search. It produces results for three search criteria—"Kinderknecht, Terry;" "Kinderknecht, T;" and the single word "Kinderknecht." An official search produces results for only one search criterion—"Terry Kinderknecht."

For some unexplained reason, Anne Baker did not request an official search using "Kinderknecht, T." Assuming an official search would accept a search request such as "Kinderknecht T," what would

have been the result of such a request? The official search has responded to a request to search "Kinderknecht" alone, albeit negatively. Would an official search yield the same response for "Kinderknecht, T"? If so, is this failure to produce a result due to the filing office's interpretation of the standard search logic so as to refuse to recognize as a "name" any criteria that does not consist of a first and last name? Certainly, the standard search logic could be so interpreted.

### IV. *In Re Erwin*

#### Erwin Distinguishable But Controlling

The Honorable Robert E. Nugent has recently addressed a case similar to this one in an unpublished opinion titled *In re Erwin*.[15] While the facts in *Erwin* are similar to those of this case, it does not involve the "filing office's standard search logic" required for an official search. Notwithstanding this difference, this court adopts Judge Nugent's rationale in the *Erwin* case.

In that case, the secured creditor, Bucklin National Bank, filed a financing statement using the name "Mike Erwin." The first name "Mike" was a nickname. Later, when Mr. Erwin filed his Chapter 7 bankruptcy, he captioned his petition in his legal name: "Michael A. Erwin." And, as in this case, because a search using this legal name would not produce the bank's financing statement, the Chapter 7 trustee contended that the bank's security interest was seriously misleading and therefore ineffective. He sought to avoid the bank's allegedly unperfected security interest under § 544 of the Bankruptcy Code.

The *Erwin* case is distinguishable from this case, however, because it involved an Access Kansas search, not an official search by the Secretary of State's filing office. This is apparent from Judge Nu-

---

15. 2003 WL 21513158 (Bankr.D.Kan.).

gent's opinion showing that counsel only furnished him with computer printouts of on-line search results. Computer print-outs of on-line search results indicate an Access Kansas search, not an official filing office search which would have resulted in a certified report.

■ Judge Nugent found, as this court does, that Revised Article 9 does not require a secured creditor to use a debtor's legal name in a financing statement and that a searcher must use judgment and reason in selecting search criteria. That is, the trustee should have concluded that a financing statement in the name of "Mike Erwin" was a reasonable possibility and should have searched under that name. Had the trustee done so, he would have discovered the bank's security interest in the database used in that case.

In reaching his conclusion that searchers must use judgment in selecting search criteria, Judge Nugent noted K.A.R. 7–17–22. This regulation prohibits human judgment on the part of filing office personnel from playing a role in determining search results, except in those instances where financing statements have been remitted but not yet entered into the computer database by the time a response to a search request is due:

> Human judgment shall not play a role in determining the results of the search, except with respect to supplemental responses regarding individual debtor names that are not automated.[16]

This prohibition only applies to a filing officer, not to an outside U.C.C. searcher who submits search criteria. A U.C.C. searcher may choose any criteria. But the searcher must use reason and select alternative names as search criteria to ensure a realistic possibility of finding a financing statement. When a bankruptcy petition in

the legal name of the debtor is signed with a nickname representing the debtor's first name, as in this case, the searcher must use that nickname as a search criterion to be considered as having acted reasonably.

The name "Terry Kinderknecht" used with the filing office's standard search logic produced the financing statements involving John Deere and Terry J. Kinderknecht because the search criterion exactly matched the debtor's name in the financing statement.

### CONCLUSION

The purpose of the U.C.C. notice filing system is to give interested parties (generally, potential creditors) an opportunity to learn whether debtors have granted a security interest in property they are offering as collateral. The system is designed to protect third parties from making loans secured by collateral that is already encumbered.

Absent special circumstances, at present in Kansas a searching creditor will be better informed by using Access Kansas as a search method. It offers a broader search that is more in accord with the purpose of a notice filing system than does the official search method. The stricter official search parameters decrease the odds that a filed financing statement will be found.

The court holds that under these statutes and regulations, the use of the individual name "Terry J. Kinderknecht" in the John Deere financing statements did not make the financing statements insufficient and that the financing statements are not *seriously misleading*. A search under the name "Terrance Kinderknecht" is not necessarily a search under the "debtor's correct name," since the Uniform Commercial Code does not limit financing

---

16. K.A.R.2002 Supp. 7–17–22.

statements of individuals to any particular name, such as a legal name.

IT IS SO ORDERED.